## BANKS v. STATE OF INDIANA.

. [No. 23,535.   Filed June 24, 1919.]

1. CRIMINAL LAW.—*Verdict.—Certainty.—Place of Punishment.* —A verdict finding the defendant guilty as charged and assessing his punishment "at a fine of $300, and imprisonment in the county jail for a period of three months, 90 days in the penal farm" was not ambiguous or uncertain as to the place of imprisonment, since, under §9926h Burns 1914, Acts 1913 p. 660, §8, it was the duty of the court to sentence the defendant to the Indiana State Farm, the term being fixed at ninety days.   p. 355.

2. INTOXICATING LIQUORS.—*Statute.—Construction.—"Furnish."* —Where the accused, pursuant to an agreement with his son-in-law, purchased intoxicating liquor to be used by them and their families on a future day, the son-in-law furnishing half of the money at the time of making the agreement, the court, in determining whether the accused was guilty of an intent to "furnish" the liquor in violation of §4, Acts 1917 p. 15, will consider the word "furnish" in the concrete as used in the act, rather than in the abstract, keeping in mind the general purpose of the act and the evils intended to be remedied.   p. 356.

3. INTOXICATING LIQUORS.—*Unlawful Keeping.—"Furnish."— Statute.*—Where the accused had in his possession intoxicating

VOL. 188—23

liquor which he purchased pursuant to, and with intent to carry out, an agreement with his son-in-law under which the liquor was to be used by them and their families on a future day, the son-in-law having furnished half of the purchase price at the time of making the agreement, he was guilty of keeping intoxicating liquor with intent to "furnish," etc., in violation of Acts 1917 p. 15, though the son-in-law had title to half of the liquor from the time of the purchase.   p. 358.

From the Sullivan Circuit Court; *William H. Bridwell*, Judge.

Prosecution by the State of Indiana against John Banks. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Arthur D. Cutler*, for appellant.

*Ele Stansbury*, Attorney-General, and *Dale F. Stansbury*, for the state.

LAIRY, C. J.—Appellant was charged by indictment in the trial court with violating §4 of the act of 1917 relating to intoxicating liquors. Acts 1917 p. 15. The indictment charged that appellant at the county of Sullivan and the State of Indiana did, on May 24, 1918, unlawfully keep intoxicating liquor with intent then and there to barter, exchange, give away, furnish and otherwise dispose of the same in the State of Indiana in violation of the laws of the State of Indiana. A trial by jury resulted in a verdict of guilty. Omitting the formal parts, the verdict of the jury is in the words following: "We, the jury, find the defendant guilty as charged in the indictment and assess his punishment at a fine of $300, and imprisonment in the county jail for a period of three months, 90 days in the penal farm." Appellant filed a motion for a *venire de novo* based on the ground that the verdict was so indefinite, uncertain, ambiguous and defective that no judgment could be rendered thereon. This motion was overruled and this ruling is assigned as error.

The court did not err in overruling this motion. Section 8 of the act of 1913, providing for the establishment of the Indiana State Farm, makes it the duty of

1. judges of circuit, superior and criminal courts to commit to that institution all male persons, above the age of commitment to the Indiana Boys' School, who have been convicted of the violation of any criminal law or of any ordinance the punishment for which formerly consisted of imprisonment in the county jail. Under the proviso of this section the court has a discretion to commit to either the county jail or the state farm, where the imprisonment is sixty days or less; but in this case, where the term of imprisonment was ninety days, it was the absolute duty of the court to commit the defendant to the state farm. In the light of this statute the verdict was not ambiguous or uncertain as to the place of imprisonment. §9926h Burns 1914, Acts 1913 p. 660, §8.

Error is also assigned on the action of the court in overruling the motion of appellant for a new trial, which was based on the grounds that the verdict is contrary to law, that the verdict is not sustained by sufficient evidence, and that the court erred in giving to the jury instruction No. 7.

The evidence most favorable to appellant shows that a few days before he was arrested he had a conversation with his son-in-law, in which a fishing trip was planned for the following Saturday, in which both of their families were to participate. It was agreed between them that they would take some beer and whisky along to be used by them and their families on that occasion, and appellant agreed to procure the liquor. His son-in-law gave him $4, and appellant bought $8 worth of liquor, using the money given him by his son-in-law and an equal amount of his own money. At the time he was arrested he had the liquor so purchased in his possession with intent to carry out the arrangement and for no

other purpose. For the purpose of the appeal the state admits that the evidence is undisputed, and the whole transaction occurred just as appellant said it did.

Under this state of facts appellant asserts that he acted as agent for his son-in-law in purchasing the portion of liquor intended for the use of him and his family; that the title therein passed to him at the time of the purchase and not to appellant, and that a future delivery to him would not constitute a sale, barter, exchange,. gift, or a furnishing or other disposition of intoxicating liquor within the meaning of the act. He cites a number of cases to sustain his position. *State* v. *Cunningham* (1856), 25 Conn. 195; *DuBois* v. *State* (1888), 87 Ala. 101, 6 South. 381; *Garbracht* v. *Commonwealth* (1880), 96 Pa. 449, 42 Am. Rep. 550.

The state admits that, under the authorities cited, appellant could not be held guilty of an intent to sell, barter, exchange or give away the liquor in his possession, but it is asserted that the facts show that he intended to furnish or otherwise dispose of it.

The sole question for decision is thus presented. Do the facts show that appellant intended to furnish the liquor in his possession to others, within the meaning of the word as used in the act?

To furnish means to supply for use. It does not necessarily imply a change in title. The master may furnish tools to a workman for use, the title remaining in the master. This common use of the term shows that the owner of property may furnish it to another by a mere delivery for use, but does a person furnish a thing to another by carrying and delivering to him an article of which he is already the owner? In deciding a question involving such a nice distinction in meaning, the definition of a word in the abstract is seldom of controlling influence. The court is generally required to consider the word in the concrete as used in

the statute to be construed, keeping in mind the general purpose of the act and the evils it was intended to remedy, as well as other rules of statutory construction.

The statute under consideration does not make it unlawful for a person to have intoxicating liquor in his possession in this state for his own use, and it expressly provides that it does not prohibit a person having liquor in his possession from giving it to a guest in his own home; but it was apparently the intention of the legislature to make it impossible for a person to obtain possession of liquor in this state. It seems to have been the purpose of the legislature to protect the people of the state from the temptation to drink intoxicating liquors by cutting off every avenue through which possession of such liquors could be obtained. Once a person has obtained possession and control of liquor, the statute does not make it unlawful to use it, but it does make it unlawful to furnish it to others except as specifically provided in the act.

In the case of *Commonwealth* v. *Davis* (1876), 75 Ky. (12 Bush) 240, the defendant below was charged with giving spirituous liquor to a minor. The evidence showed that the liquor was bought by the defendant with money furnished in whole or in part by the minor. The court said: "In its strict and primary sense the word 'give' signifies 'to confer or transfer without any price or reward; to bestow.' In its more enlarged sense it signifies 'to furnish, to supply;' and it was in this latter sense that the word was used in the statute.

"The statute was not enacted because the mere act of selling, loaning, or giving spirituous, vinous, or malt liquors to minors was in and of itself mischievous, but because such acts place the liquor in their hands and enable them to drink it, whereby they may become debauched and ruined."

In the case of *State* v. *Reese* (1912), 69 Wash. 437,

125 Pac. 363, the court construed a statute making it .unlawful to sell, give away, dispose of, exchange or barter intoxicating liquor to an Indian. The court said: "It would seem that when the legislature used the words 'sell,' 'give away,' 'dispose of,' 'exchange,' and 'barter,' practically every imaginable method of an Indian acquiring intoxicating liquor was described. If the allegations of this information are true, then the defendant was the direct voluntary instrument of the disposition of the liquor to the Indian. Even assuming that the defendant was the mere agent of the Indian, and that the person from whom he purchased the liquor with the Indian's money had knowledge of the purpose of the purchase, yet the defendant acquired possession and control over the liquor, and this possession and control he transferred to the Indian. Surely by that act he *disposed* of the liquor. True, he did not 'sell' or 'give away' the liquor; but the very fact that the legislature used the words 'disposed of' in addition to 'sell' and 'give away' shows the intent of the legislature to include every possible subterfuge by which an Indian might acquire liquor through the voluntary act of another."

The same rule has been applied to the construction of statutes relating to dry territory where the acts forbidden by the statutes included the furnishing or otherwise disposing of intoxicating liquor. *State* v. *Hassett* (1891), 64 Vt. 46, 23 Atl. 584; *People* v. *Lapham* (1910), 162 Mich. 394, 127 N. W. 366.

Conceding that the title to the portion of the liquor for the son-in-law was in him from the time it was purchased and came into the hands of appellant, it

3. cannot be asserted that it had ever been in his possession or control. The purpose of the statute, as heretofore stated, was to protect the health and morals of the inhabitants of the state by keeping intoxicating liquors out of their possession and beyond their

control. If appellant had delivered the liquor in accordance with his declared purpose, he would have been the active means by and through which the liquor in question would have been placed in the custody and control of persons whom the statute was enacted to protect. In the opinion of the court, the evidence is sufficient to sustain the verdict, and the verdict is not contrary to law.

In view of the evidence the instruction complained of was not prejudicial to appellant's rights.

Judgment affirmed.

NOTE.—Reported in 123 N. E. 691.