## THE STATE OF KANSAS V. JACOB GREBE.

1. CRIMINAL LAW; *Knowledge of Accused; Instruction.* An instruction in a criminal case, that, "where evidence which would rebut or explain certain facts and circumstances of a grave and suspicious nature, is peculiarly within the defendant's knowledge and reach, and he makes no effort to procure it, the jury may properly take such fact into consideration in determining the prisoner's guilt or innocence; but no inference of guilt is to be drawn from the omission of the defendant and his wife to testify"—is not erroneous; and if applicable to the facts in the case furnishes no ground of reversal.

2. LARCENY; *Circumstances and Conduct of Accused, When Competent, as Tending to Show Guilt.* On the trial of a party charged with the larceny of a large sum of money, and in which the evidence is mainly circumstantial, evidence that prior to the larceny the defendant's family were in very straitened circumstances, and that subsequently it displayed considerable means, and evidence that subsequently to the larceny a creditor in seeking to collect his claim charged him in the presence of several witnesses with having had and used considerable sums of money, and with having lost many dollars in gambling, and referred him to the records of the county and to the bystanders for proof of such charges, and that defendant in reply thereto denied none of such charges, except that he had lost any amount of money in gambling, is competent to go to the jury.

3. ———— Upon examination of the testimony in this case, it is held, that the judgment cannot be set aside in this court on the ground that the verdict is against the evidence.

### *Appeal from Leavenworth District Court.*

GREBE was tried and convicted of the crime of grand larceny. The information charged the defendant with the stealing of $25 in gold, $26 in silver, and $2,500 in treasury notes and national bank notes, belonging to John Sass, and from the dwelling-house of Sass, on the night of 17th January 1875. Trial at the March Term 1876. Verdict of guilty, and defendant was sentenced to imprisonment in the penitentiary for five years. From such judgment of conviction *Grebe* appeals.

*F. P. Fitzwilliam,* for appellant.

*L. M. Goddard,* county-attorney, for The State.

.The opinion of the court was delivered by

BREWER, J.: Appellant was convicted in the district court of Leavenworth county of the crime of grand larceny in the stealing of $2,551 in money, and from such conviction appeals to this court. He alleges error in three respects — that the verdict was against the evidence, that improper testimony was admitted, and that the court erred in one of its instructions. The instruction complained of was as follows:

"The jury should not find the defendant guilty because he may have no evidence to show his whereabouts at the time the offense charged is alleged to have been committed, nor to show where or from whom he received any of the money spoken of by witnesses. Nor will they presume that his character is bad, simply because he has offered no testimony of his good character. But where evidence which would rebut or explain certain facts and circumstances of a grave and suspicious nature, is peculiarly within the defendant's knowledge and reach, and he makes no effort to procure that testimony, the jury may very properly take such fact into consideration in determining the prisoner's guilt or innocence. But no inference of guilt is to be drawn from the omission of the defendant and his wife to testify."

The special objection of appellant is, of course, to the next to the last sentence. It seems to us that that clause is only a recognition of a well-understood principle of human action. 1. Effect of silence of accused. The instinct of self-preservation impels one in peril of the penitentiary to produce whatever testimony he may have to deliver him from such peril. Every man will do what he can to shield himself from the disgrace of a conviction of crime, and the burden of punishment. We all know this. We all expect it. Whenever therefore a fact is shown which tends to prove crime upon a defendant, and any explanation of such fact is in the nature of the case peculiarly within his knowledge and reach, a failure to offer an explanation must tend to create a belief that none exists. Will not a man who can, explain that which unexplained will stamp him a criminal and consign him to the felon's cell? The criminal law furnishes in its rules

more than one illustration of this principle. The possession of recently-stolen property casts upon the possessor the duty of explaining such possession. Why? Because the fact and manner of acquiring that possession are peculiarly within his knowledge and reach, and the instinct of self-preservation will compel him to give an explanation thereof consistent with his innocence, if any such explanation exists. Other illustrations might be cited, but it is scarcely necessary. The principle itself rests in the common knowledge and conviction of all. We think the proposition as stated is abstractly correct. Its applicability to the case at bar will be evident when we come to notice the testimony.

A second alleged error is in the admission of testimony. The larceny charged was of a large amount of money. The court permitted testimony tending to show that prior to the larceny the defendant's family were in very straitened circumstances, and that subsequently they displayed considerable means; and the court also permitted a creditor of Grebe's to testify to a conversation had with him after the larceny, in which, to induce payment of his claim, he charged Grebe with having gambled away some hundreds of dollars, and with having had and used considerable money, and referred him to the county records, and to certain parties who were present as having given the information, and a part of which charges only Grebe denied. We think both these items of testimony competent. True, the testimony was not direct proof of Grebe's guilt. And indeed there was no direct testimony as to who committed the crime. But there were circumstances which might well tend, in connection with other facts, to induce a belief in his guilt. A change in one's pecuniary condition may often be very significant. At least, it is a circumstance which the jury have a right to consider. So also, conversations with the defendant as to his pecuniary condition, although not had in reference to the alleged larceny, may yet throw light upon such condition, and for the same reason are proper for the consideration of the jury.

2. Circumstances and conduct of accused. Evidence.

But the principal question in the case is, it seems to us, whether the verdict was against the evidence. As already intimated, there was no direct proof of defendant's guilt. It was a case of circumstantial testimony. And the question therefore is, whether these circumstances were such as to exclude every other reasonable hypothesis than that of defendant's guilt. *Horne v. The State*, 1 Kas. 42. After giving the testimony a careful review, we are constrained to hold that the verdict must be sustained. The case against the defendant, it must be admitted, is not as strong as some that are brought here. The inference of guilt does not flow from the circumstances with such absolute and irresistible certainty as we sometimes find. But still the evidence was sufficient. It will be unnecessary to notice it in detail. It will be sufficient to mention a few of the more salient facts. Sass and his wife, from whom the money was stolen, lived across the alley from Grebe, and had so lived for years. They went out to spend the evening with a neighbor, and returning about ten o'clock found the money gone. The chief of police was summoned, and the premises examined. A light snow had fallen during the evening, and a single track was found leading through the back yard and across the alley in the direction of Grebe's house. About midnight the officer went to Grebe's house, and found him in bed. His shoes were on the floor, and still wet. He said he had been out in the evening about seven o'clock to take a glass of beer with a friend. The track was not measured, but it was shown to have been made by a small foot, and that Grebe had such a foot. Prior to this time, Grebe, who was a shoemaker, had been away in Great Bend. While away his family was apparently in great destitution. After his return he remained in Leavenworth for some weeks after the larceny, and then again went to Great Bend. There he paid off a mortgage on a lot he had bought, of $265. His family also seemed to have plenty of money, and his wife displayed a large pocket-book. The afternoon before he left Leavenworth the second time, for Great Bend, he and his wife were

<span style="font-variant: small-caps">3. Circumstantial evidence. Weight of testimony.</span>

seen to go out in the yard, back of their house, and there dig into the ground with a shovel, and uncover something which his wife picked up and wrapped in her apron and carried into the house. These are some of the more important items of the testimony; and taken in connection with the more minute details, as described by the various witnesses, we hold, as we have stated, that the verdict must be sustained.

It may not be out of place to state in this connection, that we have been informed that since the trial Grebe was called as a witness in a civil suit brought for this money, and in that admitted his connection with the crime here charged, while at the same time implicating others in the offense.

The judgment will be affirmed.

All the Justices concurring.